UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

FERNANDO LINARES BELTRANENA,

    Plaintiff,

v.

HILLARY RODHAM CLINTON,
 in her official capacity as the Secretary
 of State for the United States of America,

    Defendant.

Civil Action No. 09-1457 (PLF)

---

OPINION

       This Freedom of Information Act case is before the Court on defendant's motion for partial summary judgment, defendant's supplemental motion for summary judgment, and defendant's motion for a protective order. Upon consideration of the parties' papers, the attached declarations and exhibits, the relevant legal authorities, and the entire record in this case, the Court will deny without prejudice defendant's motion for partial summary judgment and supplemental motion for summary judgment, and the Court will grant defendant's motion for a protective order.[1]

---

[1] The papers reviewed in connection with the pending motions include the following: plaintiff's complaint ("Compl."); defendant's motion for a protective order ("Mot. for Protective Order"); plaintiff's response to defendant's motion for a protective order ("Response to Mot. for Protective Order"); defendant's motion for partial summary judgment ("Mot."); plaintiff's response in opposition to defendant's motion for partial summary judgment ("Opp."); defendant's reply to plaintiff's response in opposition to defendant's motion for partial summary judgment ("Reply"); defendant's supplemental motion for summary judgment ("Supplemental Mot."); plaintiff's response in opposition to defendant's supplemental motion for summary judgment ("Supplemental Opp."); and defendant's reply to plaintiff's response in opposition to defendant's supplemental motion for summary judgment ("Supplemental Reply").

I. BACKGROUND

Plaintiff Fernando Linares Beltranena is "a resident and citizen of Guatemala and an attorney who does business in the United States." Opp., Ex. 9, Affidavit of Fernando Linares Beltranena ("Beltranena Aff.") ¶ 2, Mar. 11, 2010. On November 13, 2006, Mr. Beltranena submitted a Non-Immigrant Visa application to defendant the United States Department of State. See id.; Compl. ¶ 6.[2] On May 8, 2007, the Department's Consul General in Guatemala notified Mr. Beltranena that his application "had been refused" on the basis of a "'permanent ineligibility' for a U.S. Visa under [S]ection 212(a)(C)(ii)" of the Immigration and Nationality Act. Beltranena Aff. ¶ 4; see Mot., Attachment 1, Declaration of Margaret P. Grafeld ("Grafeld Decl.") ¶ 4, Feb. 19, 2010.

On September 12, 2007, Mr. Beltranena submitted a FOIA request to the Department "for all evidence related to the refusal of [his] Visa application." Beltranena Aff. ¶ 5; Grafeld Decl. ¶ 4. Specifically, Mr. Beltranena requested that the Department "give [him] the reason, and the evidence, for [his] US visa revocation and denial of a new visa request . . . ." Opp., Ex. 2, Freedom of Information Act Request at 1, Sept. 12, 2007. The Department responded on December 20, 2007, stating that it would "begin the processing of [his] request based upon the information provided in [his] communication." Grafeld Decl. Ex. 2, Letter from

---

[2] Mr. Beltranena has brought this action against Hillary Rodham Clinton in her official capacity as the Secretary of State for the United States of America. See Compl. at 1. FOIA actions, however, "may be brought only against an agency." Schmidt v. Shah, Civil Action No. 08-2185, 2010 WL 1137501, at *1 n.2 (D.D.C. Mar. 18, 2010) (citing 5 U.S.C. § 552(a)(4)(B)); see Hart v. U.S. Department of Justice, 648 F. Supp. 2d 113, 114 n.1 (D.D.C. 2009). Because Secretary Clinton does not seek dismissal on this basis, the Court will substitute the Department of State as the real party in interest. See Schmidt v. Shah, 2010 WL 1137501, at *1 n.2.

C. Duckett to F. Beltranena at 1, Dec. 20, 2007; see Grafeld Decl. ¶ 5. Mr. Beltranena's FOIA request was assigned the "case control number 200705478." Grafeld. Decl. ¶ 5.

By e-mail dated February 14, 2008, the Department informed Mr. Beltranena that it had "initiated searches in the following" three file systems: "[1] The Central Foreign Policy Records (the principle [sic] record system of the Department of State), [2] the Office of Visa Services, and [3] the U.S. Embassy in Guatemala." Grafeld Decl. Ex. 4, E-mail from C. Boston to F. Beltranena at 1, Feb. 14, 2008; see Grafeld Decl. ¶ 7. The Department described the status of those searches at that time:

> The search in the Office of Visa Services has been completed and the Office of Visa Services will be responding to you directly once the material has been reviewed. The Central Foreign Policy Record search has been completed, and is currently being prepared for review. The search of the U.S. Embassy in Guatemala has not been completed.

Grafeld Decl. Ex. 4, E-mail from C. Boston to F. Beltranena at 1, Feb. 14, 2008.

On March 6, 2008, the Department's Office of Visa Services informed Mr. Beltranena that it had "searched its records, located, and reviewed 10 documents, totaling 28 pages, relating to [Mr. Beltranena's FOIA] request." Opp., Ex. 3, Letter from J. Gorsky to F. Beltranena at 1, Mar. 6, 2008. The Office of Visa Services withheld nine of those documents in full and one document in part, explaining:

> The 10 documents in question pertain to State Department records relating to the application for a visa or permit to enter the United States. As such, they are separately protected from disclosure by Section 222(f) [of the Immigration and Nationality Act] and are exempt from release by the (b)(3) exemption to the [FOIA]. However, . . . we agree to release one document in part, as this document originated with you or someone acting on your behalf, and release would therefore not breach its confidentiality.

3

Id. The Office of Visa Services stated that Mr. Beltranena could appeal its decision to withhold those records to the Chairman of the Department's Appeals Review Panel. Id.; see Grafeld Decl. ¶ 8.

By letter of April 2, 2008, Mr. Beltranena was informed that "[t]he search of the Central Foreign Policy Records [was] completed, and . . . resulted in the retrieval of three documents responsive to [his] request." Opp., Ex. 4, Letter from M. Grafeld to F. Beltranena at 1, Apr. 2, 2008. This letter stated that "all three [documents] must be withheld in full" and explained that "two were withheld under exemption (b)(1) . . . and all three under exemption (b)(3) . . . ." Id. This letter also informed Mr. Beltranena of his right to appeal the decision to withhold documents. Id.; see Grafeld Decl. ¶ 9. On April 11, 2008, Mr. Beltranena appealed his "right to review the three documents cited [in the April 2, 2008 letter], and any other documents pertaining to the reason why [his] US visa was revoked, and subsequently denied . . . ." Opp., Ex. 5, Appeal Case Number 200705478 at 1, Apr. 11, 2008.

Nearly a year later, on March 17, 2009, Mr. Beltranena inquired about the status of his appeal. See Opp., Ex. 6, Letter from E. McLaughlin to F. Beltranena at 1, Apr. 13, 2009. The Department responded on April 13, 2009, stating that Mr. Beltranena's appeal "should be reviewed in the near future," id.; the Department further explained, however, that because it had failed to respond to his appeal within twenty days, Mr. Beltranena was deemed to have exhausted his administrative remedies and therefore was free to seek judicial review. Id.[3]

---

[3] It appears that there is a dispute between the parties whether, and if so, when, the Department acted on Mr. Beltranena's appeal. Compare Grafeld Decl. ¶ 12, with Beltranena Aff. ¶ 9. This dispute has no bearing on the Court's analysis, however, since the Department has not suggested that Mr. Beltranena failed to exhaust his administrative remedies. See Opp. at 6; Opp., Ex. 6, Letter from E. McLaughlin to F. Beltranena at 1, Apr. 13, 2009 ("Federal regulations

Mr. Beltranena filed his complaint in this Court on August 3, 2009. See Compl. at 4. His complaint requests "declaratory and injunctive relief to compel the disclosure and release of agency records improperly withheld by the [Department] . . . ." Id. ¶ 1. After this action commenced, the Department sent a letter to Mr. Beltranena on December 8, 2009, informing him that it had completed its "search of the records of the United States Embassy in Guatemala City, Guatemala" — the third potential source of responsive records. Opp., Ex. 7, Letter from M. Grafeld to F. Beltranena at 1, Dec. 8, 2009. That "search resulted in the retrieval of 13 documents . . . responsive to [Mr. Beltranena's] request." Id. at 1. The Department informed Mr. Beltranena that eleven of those documents were being withheld in full, one document was being released with excisions, and one document needed to be reviewed by another agency. Id. Furthermore, the Department indicated that additional disclosures could now be made and that it had identified additional responsive documents, specifically: (1) a document previously withheld in part could now be released in full; (2) one additional document had been retrieved from the Central Foreign Policy Records and was being released in part; and (3) twenty-nine additional documents had been retrieved from the Office of Visa Services — twenty six of which were being withheld in full, one was being released in part, and two were being released in full. Grafeld Decl. ¶¶ 14-16; see Opp., Ex. 7, Letter from M. Grafeld to F. Beltranena at 1-2, Dec. 8, 2009.

---

provide that a requester shall be deemed to have exhausted his/her administrative remedies if an agency fails to respond to an appeal within the twenty-day time period . . . . [S]ince the twenty-day period has elapsed, [Mr. Beltranena is] free to seek judicial review . . . ."); see also Jarvik v. CIA, Civil Action No. 08-1911, 2010 WL 3832557, at *1 n.2 (D.D.C. Sept. 28, 2010) ("If an agency fails to answer a FOIA request within twenty days, FOIA deems the requester to have constructively exhausted his administrative remedies and permits immediate judicial review.") (citing 5 U.S.C. § 552(a)(6)(C)).

5

On December 23, 2009, the Court ordered the Department to produce to Mr. Beltranena "a Vaughn Index, along with all non-exempted, responsive documents" by February 12, 2010, and set a briefing schedule for dispositive motions, beginning on February 19, 2010. See Minute Order, Dec. 23, 2009. On January 5, 2010, however — before briefing was to begin and before the Department was required to produce its Vaughn Index — Mr. Beltranena served seven interrogatories on the Department. See Mot. for Protective Order at 1. In response, the Department filed a motion for a protective order, requesting that the Court prohibit "the discovery [Mr. Beltranena] seeks, as well as any other discovery in this case, pending [the Department's] filing a motion for summary judgment and the Court's ruling on such a motion." Id.

Then, as ordered, the Department moved for partial summary judgment, attaching the Vaughn Declaration of Margaret P. Grafeld in support. In its motion, the Department contends that it released all non-exempt responsive documents to Mr. Beltranena — except for one document pending another agency's review — and that it "properly withheld information relating to visa processing, diplomatic exchanges between the governments of the United States and Guatemala, internal agency deliberations, and the privacy interests of third parties." Mot. at 1. The Department subsequently filed a supplemental motion for summary judgment, addressing the one outstanding document that had been submitted to another agency for review. Supplemental Mot. at 1. In support of its supplemental motion, the Department attached a supplemental Vaughn Declaration of Margaret P. Grafeld. See id. The Department explained that the document at issue had been reviewed by the United States Drug Enforcement Administration and that the DEA had determined that the document was in fact "properly a

record of [the Department] of State." Supplemental Mot. at 2. The Department thus reviewed the document and decided that it should be withheld in full. Id.

In summary, the Department has identified a total of fifty-six documents, comprising one-hundred-and-six pages (not including the documents released in full), that are, in the Department's view, responsive to Mr. Beltranena's FOIA request. Fifty of those documents have been withheld in full; three have been withheld in part and disclosed in part; and three have been released in full.

## II.  STANDARD OF REVIEW

### *A.  The Freedom of Information Act*

The fundamental purpose of the FOIA is to assist citizens in discovering "*what their government is up to.*" U.S. Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989) (internal quotations and citation omitted) (emphasis in original). As the Supreme Court emphasized again earlier this month, the FOIA strongly favors openness and "'broad disclosure'" with narrowly construed exemptions. Milner v. Department of the Navy, No. 09-1163, 2011 WL 767699, at *6 (Mar. 7, 2011) (quoting Department of Justice v. Tax Analysts, 492 U.S. 136, 151 (1989)). As Congress recognized in enacting the FOIA, an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978); see also Department of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (purpose of the FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny") (internal quotations and citation omitted).

Therefore, "disclosure, not secrecy, is the dominant objective of the Act." Department of the Air Force v. Rose, 425 U.S. at 361.

### B. *Summary Judgment*

The Court will grant a motion for summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits its own affidavits or declarations or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007); Farrugia v. Executive Office for U.S. Attorneys, Civil Action No. 04-0294, 2006 WL 335771, at *3 (D.D.C. Feb. 14, 2006). In a FOIA case, the Court may award summary judgment solely on the basis of information provided in affidavits or declarations when the affidavits or declarations are "relatively detailed and non-conclusory," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotations and citation omitted), and "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary

8

evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820, 826-27 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974); Hertzberg v. Veneman, 273 F. Supp. 2d 67, 74 (D.D.C. 2003). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotations and citation omitted); see also Students Against Genocide v. Department of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Hertzberg v. Veneman, 273 F. Supp. 2d at 74.

## III. DISCUSSION

The Department contends that it is entitled to summary judgment because it conducted reasonable searches for responsive records, properly withheld documents pursuant to applicable exemptions, and complied with its segregability obligations. Mr. Beltranena disagrees; he contends that the Department has failed to demonstrate the adequacy of its searches for responsive records, failed to provide a sufficiently detailed justification for withholding thirty-three documents, and failed fully to comply with its segregability obligations with respect to one document.

### A. Adequacy of Search

Upon receipt of a request under the FOIA, an agency must search its records for responsive documents. See 5 U.S.C. § 552(a)(3)(A). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325

(D.C. Cir. 1999) (quoting Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Campbell v. U.S. Department of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998). The agency bears the burden of showing that its search was calculated to uncover all relevant documents. Steinberg v. U.S. Department of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982); Judicial Watch, Inc. v. U.S. Department of Justice, 185 F. Supp. 2d 54, 63 (D.D.C. 2002). Although the affidavits or declarations submitted by the agency need not "set forth with meticulous documentation the details of an epic search for the requested records," Perry v. Block, 684 F.2d at 127, they must describe "what records were searched, by whom, and through what processes," Steinberg v. Department of Justice, 23 F.3d at 552, and must show that the search was "reasonably calculated to uncover all relevant documents." Wilderness Soc'y v. U.S. Department of the Interior, 344 F. Supp. 2d 1, 20 (D.D.C. 2004) (citing Weisberg v. U.S. Department of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). Agency affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [a plaintiff] to challenge the procedure utilized" are insufficient to support summary judgment. Weisberg v. U.S. Department of Justice, 627 F.2d 365, 371 (D.C. Cir. 1980). In the absence of contrary evidence, affidavits or declarations submitted by an agency are sufficient to demonstrate an agency's compliance with the FOIA. Perry v. Block, 684 F.2d at 126. On the other hand, if "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the

agency is not proper." Truitt v. Department of State, 897 F.2d at 542; see also Valencia-Lucena v. U.S. Coast Guard, 180 F.3d at 326.

Although the Department has submitted a declaration by Margaret P. Grafeld in an attempt to meet its burden with regard to the adequacy of the searches performed, this declaration does not leave either Mr. Beltranena or this Court confident that the Department has conducted searches reasonably calculated to uncover all relevant documents.[4] The declaration makes conclusory statements that the searches were adequate, but fails to provide necessary details for the Court to determine if this was in fact the case.

The Department asserts that its "search for responsive records is amply described in the Grafeld Declaration, specifically paragraphs 17 to 24." Mot. at 4. In those paragraphs, Ms. Grafeld asserts that the Department "determined that the Central Foreign Policy Records, the Office of Visa Services, and the U.S. Embassy in Guatemala were reasonably likely to contain responsive records" and thus that the Department "tasked searches of those Department components." Grafeld Decl. ¶ 18. Ms. Grafeld then asserts that those searches were conducted by certain unnamed individuals — e.g., "a researcher," id. ¶ 19, and "Department personnel," id. ¶ 23 — who were familiar with the contents and organization of the respective files and the subject matter of Mr. Beltranena's request. See id. ¶¶ 19, 22, 24. Ms. Grafeld never describes who performed the searches or how the searches were performed; rather, she states only that

---

[4] As discussed, the Department submitted a supplemental declaration with its supplemental motion for summary judgment. The Department submitted this declaration solely for purposes of "provid[ing] additional information concerning one document that the Department referred to another agency for review . . . ." Supplemental Declaration of Margaret P. Grafeld ("Supplemental Grafeld Decl.") ¶ 2, March 23, 2010. This supplemental declaration provides no additional detail regarding the nature of the Department's searches.

three file systems were searched and that the Department found responsive records there. See id. ¶¶ 17-24.

As an example, Ms. Grafeld describes that the Department's Central Foreign Policy Records "is the Department's centralized records system and contains over 30 million documents . . . ." Grafeld Decl. ¶ 19. She then asserts that, as a general matter, searches of this file system "are conducted through an automated interface" that differs depending on whether the documents are "full-text searchable." Id. Yet, with respect to the specific searches for documents responsive to Mr. Beltranena's request, Ms. Grafeld provides no detail about the search terms that were used or the type of searches that were performed on a file system containing "*over 30 million documents*." Id. ¶ 19 (emphasis added). Instead, she simply states, in conclusory terms: the Department "conducted initial and supplemental searches of the Central File that were designed to identify any document relating to [Mr. Beltranena]." Id. ¶ 20. The same lack of detail exists with respect to the searches of the Office of Visa Services and the U.S. Embassy in Guatemala. See id. ¶¶ 22, 24.

The Court finds that Ms. Grafeld's declaration is insufficient to satisfy the Department's burden to show that its searches were "'reasonably calculated to uncover all relevant documents'" because the declaration is not "'reasonably detailed . . . [and does not set] forth the search terms and the type of search performed . . . .'" Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d at 92 (quoting Wilderness Soc'y v. U.S. Department of the Interior, 344 F. Supp. 2d at 20); see also Weisberg v. U.S. Department of Justice, 627 F.2d at 371; Friends of Blackwater v. U.S. Department of the Interior, 391 F. Supp. 2d 115, 120-21 (D.D.C. 2005). To satisfy its burden, the Department "'must describe what records were

12

searched, by whom, and through what processes . . . .'" Murray v. Federal Bureau of Prisons, Civil Action No. 09-1494, 2010 WL 3832599, at *6 (D.D.C. Sept. 29, 2010) (quoting Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d at 92). The Department therefore may need to conduct further or additional searches to satisfy its obligations, and it certainly must supplement its supporting declarations regarding the adequacy of its searches in a manner consistent with the directives in this Opinion. See Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d at 93; Judicial Watch, Inc. v. U.S. Department of Justice, 185 F. Supp. 2d at 65 ("[W]hen an agency's affidavits or declarations are deficient regarding the adequacy of its search, . . . the courts generally will request that the agency supplement its supporting declarations.").[5]

### B. Segregability

"The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." Mead Data Cent., Inc. v. U.S. Department of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). Accordingly, "[i]f a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the nonexempt portions are inextricably intertwined with exempt portions." Hussain v. U.S. Department of Homeland Sec., 674 F. Supp. 2d 260, 272 (D.D.C. 2009) (citing Trans-Pacific

---

[5] Because the Department has not established that its searches for records responsive to Mr. Beltranena's request were reasonably calculated to locate responsive records, the Court will deny without prejudice the Department's motion for partial motion summary judgment and supplemental motion for summary judgment and will direct the Department to supplement its declarations. The Court therefore will defer consideration of the exemptions claimed with respect to the records described in Ms. Beltranena's declaration and supplemental declaration. See Murray v. Federal Bureau of Prisons, 2010 WL 3832599, at *7; Strunk v. U.S. Department of State, Civil Action No. 08-2234, 2011 WL 855802, at *6 (D.D.C. Mar. 10, 2011).

Policing Agreement v. U.S. Customs Service, 177 F.3d 1022, 1027 (D.C. Cir. 1999)). To withhold the entirety of a document, an agency must demonstrate "'that it cannot segregate the exempt material from the non-exempt and must disclose as much as possible.'" Id. (quoting Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d at 90). "[T]o demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability." Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting Mead Data Cent., Inc. v. U.S. Department of the Air Force, 566 F.2d at 261). An agency is not required, however, "to provide so much detail that the exempt material would be effectively disclosed." Id.

It is established that courts have "an affirmative duty to consider the segregability issue *sua sponte*." Trans-Pacific Policing Agreement v. U.S. Customs Serv., 177 F.3d at 1028 (emphasis in original); see also Powell v. U.S. Bureau of Prisons, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) ("'[I]t is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or lack thereof.'") (quoting Church of Scientology v. U.S. Department of the Army, 611 F.2d 738, 744 (9th Cir. 1979)). Therefore, "a court in this circuit must separately examine any issues of segregability, even where the claimed exemption is not contested, to ensure compliance with the FOIA." Wilson v. U.S. Department of Transp., 730 F. Supp. 2d 140, 155 (D.D.C. 2010).

As stated in Ms. Grafeld's declaration, the Department located fifty-six documents that were, in its view, responsive to Mr. Beltranena's request. Grafeld Decl. ¶ 112. The Department withheld fifty of those documents in full, released three in part, and released

14

three in full.  See id.; Supplemental Grafeld Decl. ¶ 7.[6]  In making its withholdings, the Department relied on FOIA Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(F).  See Mot. at 2; Grafeld Decl. ¶¶ 25-44; Supplemental Grafeld Decl. ¶ 7.  The Department contends that it properly invoked the applicable exemptions and that it complied with its segregability obligations.  Mot. at 4-19.  Mr. Beltranena disagrees.  With respect to exemptions, Mr. Beltranena contests the withholding of thirty-three documents described in Paragraphs 78 through 111 of Ms. Grafeld's declaration.  Opp. at 8.[7]  With respect to segregability, Mr. Beltranena focuses exclusively on the one document listed in Ms. Grafeld's supplemental declaration, Document G8, asserting that this supplemental declaration "does not provide any demonstration whatsoever, must less a 'detailed justification,' that no information within Document G8 can be reasonably segregated from the portions of Document G8 that are claimed to be exempt from disclosure."  Supplemental Opp. at 2.

The thirty-three documents in dispute with respect to exemptions have all been withheld pursuant to Exemption 3 of the FOIA.  As noted, because the Court finds that the Department has not met its burden of establishing the adequacy of its search, the Court will defer consideration of whether Exemption 3 applies to these disputed documents.  See supra n.5.  Even if this exemption applied, however, a review of Ms. Grafeld's declaration makes clear that the Department has not met its burden with regard to segregability in connection with these

---

[6] The three documents released in full were not described in Ms. Grafeld's declaration.

[7] The Department has given these thirty-three documents the following titles: V1; V4; V6; V7; V8; V9; V10; VV1; VV2; VV3; VV4; VV7; VV8; VV9; VV24; VV25; VV31; VV32; VV33; VV38; VV44; VV45; VV46; VV47; VV48; VV49; VV50; VV51; VV52; VV54; VV55; VV56; VV67.  See Grafeld Decl. ¶¶ 78-111.

15

thirty-three documents. It is also clear that the Department has failed to meet its burden with regard to segregability in connection with all other responsive documents described in Ms. Grafeld's declaration and supplemental declaration, except for the following five: A3; E3; G11; G12; and G24.[8]

Ms. Grafeld's declarations provide a brief description of each remaining document in numbered paragraphs and state which exemptions, in the Department's view, apply. Yet a close examination of the declarations shows that — but for the five documents cited above — the Department's *only* explanation as to how it met the segregability requirement is one blanket statement in the last paragraph of Ms. Grafeld's initial declaration that "[t]he Department determined that no additional, meaningful, non-exempt information can be released from the documents withheld in full or part." Grafeld Decl. ¶ 112.[9] This statement is inadequate to meet

---

[8] For these five documents, the Court finds that Ms. Grafeld's declaration provides sufficiently detailed justifications for non-segregability that need not be supplemented. With respect to document A3, Ms. Grafeld states: "[O]nly paragraph two is withheld, which pertains to the issuance or refusal of a visa to [Mr. Beltranena] to enter the United States. . . . There is no additional information that may be segregated and released from this document." Grafeld Decl. ¶ 46. Similarly, with respect to documents E3, G11, and G12, Ms. Grafeld provides a description of these three related documents and then asserts that "[t]he facts and analysis are inextricably intertwined, such that segregation of factual material is not possible." Id. ¶ 50. Finally, with respect to document G24, Ms. Grafeld explains: "The only portions withheld were margin notes made by consular officers at the Embassy that relate to the issuance or refusal of a visa or permit to enter the United States." Id. ¶ 73.

[9] In its supplemental *motion*, the Department asserts, with respect to Document G8, that "no segregable information could be released because after redacting the information properly withheld under exemptions 6 and 7(C), (D) and (F), there is no intelligble information left." Supplemental Mot. at 9 (citing Grafeld Supp. Decl. ¶¶ 8-12). This statement, if included in Ms. Grafeld's sworn *declaration*, would provide a sufficiently detailed justification for the non-segregability of Document G8. The problem, however, is that Ms. Grafeld's supplemental declaration says nothing of the sort. The supplemental declaration focuses solely on why the document is exempt; it provides no information regarding segregability.

16

the Department's burden "because it does not show with reasonable specificity why the documents cannot be further segregated and additional portions disclosed." Hussain v. U.S. Department of Homeland Sec., 674 F. Supp. 2d at 272. "'[F]or *each* entry the defendant is required to specify in detail which portions of the document are disclosable and which are allegedly exempt.'" Id. (quoting Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d at 90) (alteration in original); see Animal Legal Defense Fund, Inc. v. Department of the Air Force, 44 F. Supp. 2d 295, 302 (D.D.C. 1999) ("[T]he Defendant shall not offer one finding [with respect to segregability] for *all* documents; rather, the Defendant shall make specific findings for *each* document withheld.") (alterations in original).

For these reasons, the Court concludes that the Department has not met its burden to show that it has disclosed all reasonably segregable information. The Department therefore must either release the withheld documents or produce a legally adequate Vaughn declaration. Hussain v. U.S. Department of Homeland Sec., 674 F. Supp. 2d at 272.

*C. Request for Discovery or, in the Alternative, In Camera Review*

On January 5, 2010, Mr. Beltranena served the Department with seven interrogatories. See Mot. for Protective Order at 1. As Mr. Beltranena describes, six of those interrogatories "ask for the identify of those persons who have knowledge concerning the [Department's] denial of [Mr. Beltranena's] visa application and/or the [Department's] responses to [Mr. Beltranena's] FOIA request." Response to Mot. for Protective Order at 1. The seventh interrogatory "inquires as to the manner by which the [Department] searched the government's records . . . ." Id. In response, the Department moved for a protective order prohibiting the

17

discovery sought by Mr. Beltranena, "as well as any other discovery in this case, pending [the Department's] filing a motion for summary judgment and the Court's ruling on such a motion." Mot. for Protective Order at 1.

In his oppositions to the Department's motion for partial summary judgment and supplemental motion for summary judgment, Mr. Beltranena asserts that he is entitled to conduct limited discovery or, in the alternative, that the Court should review *in camera* "the documents responsive to [Mr. Beltranena's] FOIA request but withheld by [the Department] to verify the veracity of the search and the correct application of the [Department's] claimed FOIA exemptions." Opp. at 17; see Supplemental Opp. at 1.

"In the FOIA context, a district court has broad discretion in denying both discovery and *in camera* review." Budick v. Department of the Army, Civil Action No. 09-1518, 2010 WL 3833828, at *15 (D.D.C. Sept. 30, 2010). It is established that "'[d]iscovery is not favored in lawsuits under the FOIA.'" Harrison v. Federal Bureau of Prisons, 681 F. Supp. 2d 76, 80 (D.D.C. 2010) (quoting Judicial Watch, Inc. v. U.S. Department of Justice, 185 F. Supp. 2d at 65) (alteration in original); see Jarvik v. CIA, 2010 WL 3832557, at *13 ("Generally, '[d]iscovery in FOIA is rare . . . .'") (quoting Schrecker v. U.S. Department of Justice, 217 F. Supp. 2d 29, 35 (D.D.C. 2002)). "Where an agency's affidavits regarding it search are sufficient, [district courts have] broad discretion to forgo discovery." Jarvick v. CIA, 2010 WL 3832557, at *13. Indeed, even where — as here — "an agency's affidavits regarding its search are deficient, courts generally do not grant discovery but instead direct the agency to supplement its affidavits." Id. (citing Judicial Watch, Inc. v. U.S. Department of State, 185 F. Supp. 2d at 65).

18

While the Court has found that the Department's declaration regarding its searches is deficient, it will not grant discovery at this time. Nor will the Court conduct an *in camera* review. Instead, the Court will "direct the agency to supplement its affidavits" to do what it should have done in the first place: conduct adequate searches and demonstrate that it has done so, and provide detailed explanations, document-by-document, for its segregability determinations. Jarvick v. CIA, 2010 WL 3832557, at *13. The Court therefore will grant the Department's motion for a protective order, staying all discovery in this action until further Order of this Court. Mr. Beltranena will have leave to renew his requests for discovery or, in the alternative, *in camera* review after the Department has filed a renewed motion for summary judgment with appropriate and sufficient supporting declarations.

### D. Request for Attorneys' Fees

In his opposition papers, Mr. Beltranena requests that the Court award him "attorney fees incurred . . . as a substantially prevailing party under 5 U.S.C. § 552." Opp. at 1; see Supplemental Opp. at 1-2. In light of the Court's conclusion that, at this stage, final judgment is not appropriate, and because Mr. Beltranena has not articulated any need for an interim award of fees, Mr. Beltranena's request for attorneys' fees is premature. See Hussain v. U.S. Department of Homeland Sec., 674 F. Supp. 2d at 272-73.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny without prejudice defendant's motion for partial summary judgment [Dkt. No. 14] and supplemental motion for summary judgment [Dkt. No. 19], and the Court will grant defendant's motion for a protective order [Dkt. No. 11]. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE: March 17, 2011